FILED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**LANDON L. WILLIAMS,**
**Plaintiff**

Case No: 3:16-cv-01283-HES-PDB

**v.**

**NATIONSTAR MORTGAGE, LLC, a Texas corporation;**
**FIELD ASSET SERVICES, LLC, a Texas corporation;**
**MARK A. SOLOMON, individually and/or in his official capacity;**
**and DUSTEN DYSON, individually and/or in his official capacity;**
**Defendant(s).**
_____/

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL AND
## PERMANENT INJUNCTION

1. In **Part I** of his Amended Complaint, Plaintiff Landon L. Williams ("Plaintiff"

or "Williams") brings this individual civil action complaint against Defendant

Nationstar Mortgage LLC ("Defendant" or "Nationstar") to stop Defendant's practice

of making unsolicited debt collection and other phone calls to the cellular and landline

telephones of the Plaintiff without his consent and with the use of an automatic

telephone dialing system and/or pre-recorded voice in violation of the Telephone

Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and to obtain redress for the

Plaintiff's injury caused by the Defendant's conduct. The Plaintiff alleges as follows

upon personal knowledge as to himself and his own experiences with Defendant

Nationstar Mortgage, LLC, and upon information and belief, including an

investigation conducted by attorneys in a similarly-styled class action, as to all other

matters.

1

2. In **Part II** of his Amended Complaint, Plaintiff Landon L. Williams furthermore brings this action against the Defendants Nationstar, Field Asset Services, LLC ("FAS"), Mark A. Solomon ("Solomon") and Dustin Dyson ("Dyson") for damages resulting from trespass, theft, conversion, intrusion upon seclusion, breach of contract, and violations of the Florida Deceptive and Unfair Trade Practices Act as well as the federal Fair Debt Collection Practices Act, and 42 U.S.C. § 1981. The Plaintiff further seeks an accounting of his mortgage while serviced by Defendant Nationstar Mortgage, LLC.

3. All of the common law, federal Fair Debt Collection Practices Act, 42 U.S.C. § 1981, and/or State of Florida proscribed claims stated herein stem from the damage, destruction, theft, conversion, and the illegal entry upon Williams's real property by the Defendants without his authorization or consent.

### Jurisdictional Statement

4. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and principles of pendant and supplemental jurisdiction.

5. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute designed to protect consumers' privacy with respect to their cellular and residential landline telephone numbers and accounts.

6. This Court has personal jurisdiction over Defendant Nationstar and venue is proper in this District because Defendant has repeatedly engaged in the wrongful conduct described herein in the Middle District of Florida. Additionally, venue is proper in this District because Plaintiff Landon L. Williams is a citizen of the State of Florida and received illegal telephone calls made by Defendant Nationstar in the State of Florida and in this District.

2

7. In addition, the Defendant Nationstar also transacts significant amounts of business within the Middle District of Florida, directs telephone calls here, solicits customers here, and enters into consumer and business contracts here.

8. As for Defendants Nationstar, Field Asset Services, LLC, Solomon, and Dyson, the Court has supplemental jurisdiction over Williams's state law claims under 28 U.S.C. § 1367.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as the Plaintiff resides in this District, the property that is the subject of this action is situated in this District, and a substantial part of the events, crimes, and/or omissions occurred in this District.

### Nature of Action

10. In **Part I** of Williams's Amended Complaint, Defendant Nationstar Mortgage, LLC ("Nationstar") is being sued for multiple violation(s) of the Telephone Consumer Protection Act.

11. Nationstar is a mortgage lender and servicer.

12. On an ongoing basis, Defendant Nationstar repeatedly made unsolicited telephone calls to the Plaintiff's cellular and landline telephone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227.

13. By making the telephone calls at issue in this Complaint, the Defendant has caused the Plaintiff actual harm.

14. Defendant Nationstar routinely makes these telephone calls despite the fact that the Plaintiff has ever provided his: (i) consent to be called on the specific telephone number or numbers that the Defendant actually called; and/or (ii) consent to be called with an automatic telephone dialing system or a prerecorded voice.

15. In response to Defendant Nationstar's unlawful conduct, Plaintiff Landon L. Williams brings the instant lawsuit seeking an injunction requiring the Defendant Nationstar Mortgage to cease all unsolicited telephone calling activities, and an award of statutory damages to the Plaintiff under the TCPA, together with costs and reasonable attorneys' fees, payable to each and every attorney the Plaintiff may directly retain in the prosecution of the instant action.

16. In **Part II** of his Amended Complaint, Plaintiff Landon L. Williams sues the Defendants for damages resulting from trespass, theft, conversion, intrusion upon seclusion, breach of contract, and violations of 42 U.S.C. § 1981, the Florida Deceptive and Unfair Trade Practices Act as well as the Fair Debt Collection Practices Act. Lastly, the Plaintiff demands an accounting from Defendant Nationstar Mortgage, LLC.

### The Parties

17. Plaintiff Landon L. Williams ("Williams") is an American citizen, of African descent. The Plaintiff is also a disabled American. The Plaintiff owns a home with a mortgage which was serviced by Defendant Nationstar Mortgage, LLC from sometime early in the year 2011 to the present.

18. Defendant Nationstar Mortgage, LLC ("Nationstar") is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 350 Highland Drive, Lewisville, Texas 75067. Defendant Nationstar is also registered to do business with the Florida Secretary of State. Nationstar does business throughout the United States, the State of Florida, and in the Middle District of Florida.

19. Defendant Field Asset Services, LLC ("FAS") is a privately held field services company with its principal office located at 101 West Louis Henna Blvd., Suite 400,

Austin, TX 78728. FAS is a foreign corporation authorized to do business in the State of

Florida and is in the business of property preservation and enforcing security interests for

companies that provide mortgage financial services to Florida residents.

20. Defendant Mark A. Solomon ("Solomon") is either a contractor of Defendant FAS

or a direct hire of Defendant FAS. According to the Daytona Beach Police, Defendant

Solomon is a resident of Daytona Beach, Florida. Defendant Solomon is being sued

individually and/or in his official capacity. Defendant Solomon is in the business of

property preservation and enforcing security interests for companies that provide

mortgage financial services to Florida residents.

21. Defendant Dusten Dyson ("Dyson") is either a contractor of Defendant FAS or a

direct hire of Defendant FAS. According to the Daytona Beach Police, Defendant Dyson

is a resident of Port Orange, Florida. Defendant Dyson is being sued individually and/or

in his official capacity. Defendant Dyson is in the business of property preservation and

enforcing security interests for companies that provide mortgage financial services to

Florida residents.

### Plaintiff's Compliance with Federal Prerequisites

22. In the federal civil action **Wright, et al. v. Nationstar Mortgage LLC**, No. 14-

cv-10457, Nationstar Mortgage, LLC ("Nationstar") is being sued for placing autodialed

and prerecorded calls to consumers' cellular telephones without their consent. The

lawsuit alleges Nationstar violated a federal law called the Telephone Consumer

Protection Act because consumers did not agree to receive these calls. Nationstar denies

these allegations, denies that it violated any law, and contends that it acted with

consumers' consent. The court decided that a Settlement of the **Wright** federal civil

action would include a class of "all individuals in the United States for whom Nationstar Mortgage had in its records a cellular telephone number, as of October 14, 2015." No court has decided who is right. The Parties to that litigation apparently entered into the Settlement to avoid time-consuming and expensive litigation.

23. In **Wright, et al. v. Nationstar Mortgage LLC,** Plaintiff Landon L. Williams ("Williams") was identified as an eligible class member who was materially and irreparably harmed by Nationstar Mortgage's intentional violation of the Telephone Consumer Protection Act.

24. Through the **Wright** federal class action, the Plaintiff timely exercised his right to seek a private federal action against Nationstar Mortgage LLC by submitting, via United States Postal Service first class certified mail, an "opt-out" letter to the class action administrator, thereby allowing the Plaintiff to proceed individually against the Defendant for violation(s) of both federal and any State of Florida consumer protection law.

## GENERAL FACTUAL ALLEGATIONS, PART I
### The Telephone Consumer Protection Act

25. The Telephone Consumer Protection Act was passed by the United States Congress in 1991 and is codified as 47 U.S.C. § 227. The TCPA limits the use of automatic telephone dialing systems, artificial or pre-recorded voice messages, SMS text messages, and faxes.

26. Specifically, with respect to calls made to cellular telephones, the TCPA prohibits the use of any automated telephone dialing system or any artificial or prerecorded voice

unless the recipient expressly consents to the receipt of such calls on his/her/its cellular telephone.

27. With respect to calls made to residential telephones, the TCPA prohibits the use of any artificial or prerecorded voice to deliver a message unless the recipient expressly consents to the receipt of such calls on his/her residential telephone.

28. According to the Federal Communications Commission—the agency tasked with promulgating the implementing regulations of the TCPA—to be considered "express consent," such consent must: (i) be in writing; (ii) be signed by the person providing the consent; (iii) specify the telephone number to which the person is consenting to be called; and (iv) clearly authorize the calling party to use an automated dialing system or prerecorded voice. See *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, FCC Report and Order, CG Docket No. 02-278 (Feb. 15, 2012) ¶ 33, Appendix A, at 34.

**Nationstar Has Repeatedly, Knowingly and Willfully Violated The TCPA by Placing Telephone Calls Using an Automated Telephone Dialing System and with an Artificial and/or Prerecorded Voice Without Obtaining affected Concumers' Express Consent To Do So.**

29. Nationstar is a "non-bank residential mortgage servicer" that provides "a range of services across the residential mortgage product spectrum." In general, a mortgage servicer is a third-party that is hired by an investor or owner of a loan to perform the mortgage servicing function with respect to a loan or group of loans (called a portfolio). Mortgage servicers send out bills, collect payments, allocate the monies collected in accordance with the servicing agreement, calculate escrow, and, in certain circumstances, engage in loss mitigation efforts and foreclosure and foreclosure alternatives.

30. Defendant Nationstar Mortgage placed and continues to place repeated telephone calls to the Plaintiff and other consumers who never provided Defendant (or any third party associated with their respective mortgages) with consent to call such numbers.

31. Defendant Nationstar Mortgage's calls are made for the purpose of collecting alleged debts, to purportedly "remind" the Plaintiff and other consumers to pay their mortgages, and for potentially other, non-debt collection reasons.

32. Defendant's calls often came, and did in fact, come to the Plaintiff on a daily basis and often, multiple times per day, seven days a week.

33. In making the calls at issue in this Complaint, Defendant, and/or its agents utilize an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used by Defendant and/or its agents has the capacity to generate and store random numbers, or receive and store lists of telephone numbers, and to dial those numbers, en masse, in an automated fashion without human intervention. The automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and automatically connecting answered calls to then available callers or recordings and disconnecting the rest of the calls (or placing them on hold). Accordingly, consumers receiving calls from Defendant Nationstar and/or its agents are frequently confronted with dead air or the sound of the call being disconnected (otherwise known as an "abandoned call").

34. Defendant admits that it has been using predictive dialing technology since at least as early as 2012. In Defendant's Form S-1 dated February 24, 2012, Defendant states "[i]n the account resolution group, we use a combination of predictive dialer technology

and account level assignments to contact the borrowers." See **Form S-1 dated February 24, 2012 at 125**.

35. Defendant's particular automated telephone dialing system is known as the "Avaya Proactive Contact" system. According to Avaya Inc., the "Avaya Proactive Contact" system is a "predictive dialing system" that uses "the most advanced dialing algorithms available to optimize your outbound communication campaigns." In particular, the "Avaya Proactive Contact" system enables Nationstar to "set up campaigns and manage multiple dialers across [its] organization…[and to] define and manage various outbound campaigns for marketing, sales and accounts payable all from a single system."

36. According to Avaya Inc., the "Avaya Proactive Contact" system is built with several features that enable Nationstar to "comply with even the most restrictive regulations." Despite having this capability, however, Defendant does not utilize the compliance functionality of its "Avaya Proactive Contact" system to ensure that the company is "adhering to strict regulatory compliance." Instead, Defendant routinely violates the TCPA by using its "Avaya Proactive Contact" system to call the telephones of the Plaintiff and other mortgagors without having obtained their express consent to do so.

37. In the **Wright** federal class action litigation, the Defendant Nationstar Mortgage's records contain evidence of the fact that Defendant repeatedly violated the TCPA by utilizing its "Avaya Proactive Contact" automated telephone dialing system to call Class members' telephones without having obtained express consent to do so. For example, Defendant Nationstar Mortgage's records identify the exact date and time of each and every call made by Nationstar and whether the call was made by Nationstar's "Avaya

Proactive Contact" automated telephone dialing system. The specific calls that were made by Nationstar's "Avaya Proactive Contact" automated telephone dialing system are identified within Defendant's records by the labels "AVAYA," "PRE RECORDED DIALER MESSAGE," "PRDM," "CALL ANSWERED NO POSITIVE VOICE ID DETECTED," or "CALL DROPPED FROM DIALER HOLD, NO AGENT AVAIL."

38. Defendant Nationstar's calls to cellular and residential landline phones also feature artificial or pre-recorded messages instead of live operators.

39. Making Defendant Nationstar's calls all the more problematic; the pre-recorded messages did not provide the Plaintiff with an option to stop the calls. To speak with a live operator and request that the calls stop, the Plaintiff or any other affected consumer must provide his/their personally identifying information such as a social security number.

40. This barrier is particularly problematic because the Defendant Nationstar Mortgage places unwanted telephone calls to consumers who do not have a mortgage with or serviced by Nationstar.

41. Even when consumers as the Plaintiff were called and connected to a live operator—and even when he made explicit written and verbal requests to Defendant Nationstar to stop receiving the harassing and intimidating telephone calls—the calls continued in direct contradiction to those requests.

42. Defendant Nationstar Mortgage was and is aware that the above described telephone calls were being made to the Plaintiff and other consumers without his/their prior express consent to receive them.

### Separate Class Members in Wright v. Nationstar Mortgage, LLC Have Expressed Their Outrage Over Defendant's Illegal Telephone Calls

43. Complaints regarding Defendant's conduct have not been limited to Internet postings. In fact, Defendant Nationstar Mortgage, LLC has been sued multiple times in various jurisdictions in individual federal civil action actions for violating the TCPA by routinely placing calls with an automated telephone dialing system or prerecorded voice to the Plaintiff and separate **Wright, et al. v. Nationstar Mortgage, LLC** Class members' phones without express consent to do so.

44. The fact that Defendant Nationstar Mortgage, LLC has been sued numerous times in individual actions based on the fact that Defendant has routinely placed calls with an automated telephone dialing system or prerecorded voice to cellular and residential phones without express consent to do so very clearly demonstrates that Defendant Nationstar Mortgage, LLC's continued violation of the TCPA is "knowing" and "willful".

## SPECIFIC FACTUAL ALLEGATIONS, PART I

45. Plaintiff Williams's mortgage is presently serviced by Defendant Nationstar.

46. Since at least August 2011, Defendant Nationstar Mortgage has placed numerous daily telephone calls to Plaintiff Williams' residential phone without having obtained his express consent to do so.

47. Plaintiff Williams has received these telephone calls from the telephone number(s) 888-811-5279, 888-480-2432, as well as other toll-free number(s) emanating from the State of Texas. These telephone numbers belong to and connect directly to Defendant Nationstar.

48. Each of these telephone calls was initiated with an ATDS and a pre-recorded voice. Each of the telephone calls were made to "remind" Plaintiff Williams to pay his mortgage,

even though Plaintiff Williams demanded via phone and in writing that Defendant

Nationstar stop making such harassing and intimidating multiple daily phone calls.

49. For example, Plaintiff Williams has received over an astounding **four hundred**

**(400)** separate telephone calls from Nationstar Mortgage, all made with an ATDS and a

pre-recorded voice, since the month of August, 2011.

50. Plaintiff Landon L. Wiliams did not consent to receiving these telephone calls on

his cellular phone.

51. Defendant Nationstar was fully aware that the above described telephone calls

were being made to Plaintiff Williams's residential telephone number without his prior

express consent to receive them.

52. The last four digits of Plaintiff Somers' residential telephone number are 8703.

53. On two separate occasions in the year 2013, Defendant Nationstar Mortgage even

broke into the Plaintiff's home as further proof of the Defendant's determination to

intimidate, harass and terrorize the Plaintiff as a part of its illegal mortgage servicing

activities. This illegal conduct by the Defendants, and the resultant theft of and damage to

the Plaintiff's personal and real property, forms the basis of Part II of the Plaintiff's

Amended Complaint.

### COUNT I
### Violation of the TCPA, 47 U.S.C. § 227

54. The Plaintiff incorporates by reference the foregoing allegations as if fully set

forth herein.

55. Defendant Nationstar made, or directed to be made, unsolicited telephone calls to

cellular and landline telephone numbers belonging to the Plaintiff without his prior

express consent to receive such calls.

56. Defendant Nationstar and/or its agents made the telephone calls (1) using equipment that had the capacity to store, generate or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, en masse and/or (2) using a prerecorded or artificial voice.

57. Defendant utilized equipment that made, or had made on its behalf, the telephone calls to Plaintiffs and other consumers simultaneously and without human intervention. Specifically, Defendant utilizes an Avaya predictive dialer and telephone system, among potentially other brands of automatic telephone dialing systems.

58. By making, or having made on its behalf, the unsolicited telephone calls to the Plaintiff's cellular telephone without his prior express consent, and by utilizing an ATDS or pre-recorded voice to make those calls, Defendant has violated 47 U.S.C. §§ 227(b)(1)(A)(iii) and 227(b)(1)(B).

59. Furthermore, on two separate occasions in the year 2013, Defendant Nationstar Mortgage physically broke into the Plaintiff's home as further proof to demonstrate the Defendant's determination to intimidate, harass and terrorize the Plaintiff as a part of its illegal mortgage servicing and collection activities.

60. As a result of Defendant's unlawful conduct, the Plaintiff has suffered invasions of privacy and actual damages, including in the form of monies paid to receive the unsolicited telephone calls on his cellular phone and under section 227(b)(3)(B) are each entitled to, inter alia, a minimum of $500 in damages for each such violation of the TCPA plus injunctive relief to stop the calls.

61. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff individually prays for the following relief:

a. An award of actual and statutory damages;

b. Treble statutory damages for any willful or knowing conduct;

c. An injunction requiring Defendant Nationstar Mortgage, LLC to cease all unsolicited telephone calling activities to the Plaintiff;

d. An award of reasonable attorneys' fees and costs to each attorney retained by the Plaintiff in the prosecution of this federal civil action; and

e. Such other and further relief that the Court deems reasonable and just.

## GENERAL FACTUAL ALLEGATIONS, PART II

62. Nationstar Mortgage, LLC had a consensual, agency relationship with Field Asset Services, LLC, Mark A. Solomon, and Dustin Dyson whereby Nationstar (as the principal) had the right to control the activities of FAS, Solomon, and Dyson (as the agents) and FAS, Solomon, and Dyson had the authority to act on behalf of Nationstar.

63. Natonstar had the right to control the manner and method in which FAS, Solomon, and Dyson came in contact with, entered, and altered the subject property.

64. Field Asset Services, LLC. had a consensual, agency relationship with Solomon and Dyson whereby FAS (as the principal) had the right to control the activities of Solomon and Dyson (as the agents), and Solomon and Dyson had the authority to act on behalf of FAS.

65. FAS had the right to control the manner and method in which Solomon and Dyson came in contact with, entered, and altered the subject property.

66. Solomon had a consensual, agency relationship with Dyson whereby Solomon (as the principal) had the right to control the activities of Dyson (as the agent), and Dyson had the authority to act on behalf of Solomon.

67. Solomon had the right to control the manner and method in which Dyson came in contact with, entered, and altered the subject property.

68. Solomon as the principal of Dyson is liable for the acts of Dyson.

69. FAS as the principal of Solomon and Dyson is liable for the acts of Solomon and Dyson.

70. Nationstar as the principal of FAS, Solomon, and Dyson is liable for the acts of FAS, Solomon, and Dyson.

71. Nationstar, FAS, Solomon, and Dyson are liable for any activity that was conducted at the subject property by subcontractors acting on their behalf, as their agent, under their supervision, or at their direction.

## SPECIFIC FACTUAL ALLEGATIONS, PART II

72. On February 26, 2007, Williams executed a mortgage and note ("subject loan") in favor of SunTrust Mortgage, Inc. in the amount of $116,800.00 for the purchase of his home located at 836 Vernon Street, Daytona Beach, FL ("subject property").

73. The Plaintiff has resided continuously at the subject property, without interruption, since closing on his residential home purchase on February 26, 2007.

74. At some point after its origination, Nationstar Mortgage, LLC purportedly acquired servicing rights and ownership of the subject loan.

75. On August 31, 2012 the Plaintiff's 3-year State of Florida nonrenewable temporary educator's license expired. As such, the Plaintiff could not continue teaching employment with Duval County Public Schools.

76. The Plaintiff also worked as a domestic violence Facilitator with Hubbard House, Inc. Based on the substantial decrease in the Plaintiff's monthly income effective September 1, 2012, the Plaintiff contacted Defendant Nationstar Mortgage in August, 2012 in order to seek a modification of his mortgage payment.

77. In August, 2012 the Plaintiff was assisted by several Nationstar loan representatives, including Allison Harass, who instructed the Plaintiff that in order to receive a mortgage modification, Williams "...should miss three to four consecutive mortgage payments..." in order to "...show proof of a substantial hardship", which would qualify for a mortgage modification. In early August, 2012 the Plaintiff subsequently verified those material representations he relied upon from Allison Harass with Nationstar loan representatives Caroline Rich as well as Ms. Ijay Nkele.

78. In August, 2012 the Plaintiff made full application for a mortgage modification with Nationstar, supplying Defendant Nationstar with employment, income, credit and checking/savings account documentation.

79. On his August, 2012 application for a loan modification, Williams attested under penalty of perjury that the subject property was his primary residence. And at all times material, Landon L. Williams did, in fact, reside at the subject property.

80. Based on those material representations made by Allison Harass of Nationstar Mortgage, as well as Nationtar Representatives Caroline Rich and Ms. Ijay Nkele, the

Plaintiff did as he was instructed by Nationstar Loan representatives and did not make a mortgage payment beginning the month of September, 2012.

81. In February, 2013, Williams received a denial letter of his August, 2012 application for a loan modification from Nationstar.

82. On its written Fair Credit Reporting Act/*Notification of Credit Denial*, Nationstar gave as its reason for Williams's loan denial, "under Federal National Mortgage Association ("FNMA") guidelines an applicant is ineligible for a loan modification if only source of income is from part time employment."

83. At the time Williams applied via telephone for a mortgage modification with Nationstar, Williams made it clear to Ms. Allison Harass, and every other Nationstar representative he spoke with, that he worked part-time employment with Hubbard House, Inc., although Williams earned a gross income in excess of $300 weekly from that employment. In spite of this fact, it took Nationstar six (6) months to inform the Plaintiff of his ineligibility for a loan modification because of part-time employment.

84. Sometime in or around February or March 2013, Nationstar issued a work order directing Field Asset Services to facilitate debt collection and enforce the subject mortgage by changing the locks and committing additional undertakings at the subject property.

85. After receiving the work order from Nationstar, FAS initiated a process whereby various subcontractors bid to further facilitate debt collection and enforce the subject mortgage by changing the locks and committing additional undertakings at the subject property – as directed by Nationstar through FAS.

86. Defendants Mark A. Solomon and Dustin Dyson won the bid to provide services for both Defendants FAS and Nationstar.

87. After winning the bid, FAS initiated a process whereby more subcontractors bid to facilitate debt collection and enforce the subject mortgage by changing the locks and committing additional undertakings at the subject property – as directed by Nationstar and FAS.

88. Mortgage Solutions, Inc. ("MSI") won the bid to provide services for Nationstar and FAS, Solomon, and Dyson (**hereinafter FAS, Solomon, Dyson and MSI will be referred to collectively as "Service Providers"**).

### FIRST BREAK-IN OF LANDON L. WILLIAMS'S RESIDENCE (APRIL 28, 2013)

89. On the morning of April 28, 2013 while Williams was in his bed asleep, Defendants Mark A. Solomon and Dustin Dyson irreparably damaged Williams's aluminum security door by breaking the lock and door handle, in order to gain illegal entry to Williams's home.

90. Defendants Solomon and Dyson proceeded to use a drill and burglary tools to defeat the deadbolt on the Plaintiff's front door. The men then irreparably damaged the wooden frame on the front door by forcing the door open, splitting and drilling though the wood of the door frame around the deadbolt. Defendants Solomon and Dyson proceeded to enter the Plaintiff's home.

91. At no time whatsoever did Defendants Solomon and Dyson ever knock on the Plaintiff's aluminum security door or solid wood front door, either prior to or while forcing entry into Williams home on April 28, 2013.

92. The Plaintiff awakened to what he believed was the sound of a drill inside his home. When the Plaintiff leaped out of his bed in his underwear to see what was going on,

he walked up his hallway to find Defendant Solomon standing in his foyer, with his right hand in his pocket. Defendant Dyson was kneeled in front of the front solid wood door with a cordless drill in his hand.

93. The Plaintiff screamed for the two men to immediately get out of his house. The two men refused to leave. Defendant Solomon advised Williams that he was there "...on behalf of the owner...". Williams immediately screamed to Defendant Solomon that he was the owner and that he was calling the Police.

94. While Williams had the Daytona Beach Police ("DBPD") on the phone, Defendants Solomon and Dyson remained in Williams's house, refusing to leave. It was not until Williams threatened to get his firearm that Defendant Solomon instructed Dyson, "Let's go".

95. While proceeding to walk outside his home, the Plaintiff demanded that the men not leave the premises, as the police were on their way.

96. DBPD Officer Todd Durleth promptly came to Williams's home, where he obtained the identification of Defendants Solomon and Dyson. Upon his preliminary investigation, Officer Durleth determined that the break in was a "civil matter". DBPD Officer Durleth gave the Plaintiff an incident number to reference, if the Plaintiff wanted the two Defendants prosecuted. The Plaintiff assured Officer Durleth that he would seek prosecution against Defendants Solomon and Dyson.

97. Defendants Solomon and Dyson left both the Plaintiff's aluminum front door broken as well as the frame split at the deadbolt on the Plaintiff's solid wood front door. After the break in, the Plaintiff discovered that during his sleep, Defendants Solomon and

Dyson went inside the Plaintiff's living room and posted two paper notifications of Field Asset Services being the subject property's "contact for property management" in the inside window facing the yard.

98. Williams arrived that following Monday to DBPD Headquarters and filed a Complaint against Defendants Solomon and Dyson. To the Plaintiff's knowledge, no action was taken by the Office of State Attorney, 7th Judicial Circuit, nor did the DBPD take any action against Defendants Solomon and Dyson, after the Plaintiff registered written complaints against the two men with DBPD.

99. To further add insult to injury, Defendant Nationstar subsequently tacked on an additional $380.00 to the Plaintiff's mortgage balance on its May, 2013 Statement as so-called "Property Preservation" fees, which compensated the Service Providers for their April 28, 2013 illegal break-in of Williams's home.

### SECOND BREAK-IN OF LANDON L. WILLIAMS'S RESIDENCE (MAY 17, 2013)

100. On the morning of May 17, 2013, Defendants Solomon and Dyson returned to break into the Plaintiff's home a second time.

101. Defendants Solomon and Dyson parked their moving truck in the front of Williams's residence, proceeding to walk over to Williams's immediate neighbor, Ms. Fonda Hancock, asking Ms. Hancock if Williams regularly lived at his residence.

102. Ms. Hancock informed Defendant Solomon that Williams regularly resided at his home, and that "...he needed to speak with Mr. Williams if he had any other questions."

103. The Service Providers then proceeded to force the aluminum security door open, previously damaged by their April 28, 2013 break in, and force entry on the Plaintiff's residence by drilling through the deadbolt and forcing entry through the solid wood door, which was irreparably damaged previously by Defendant Solomon and Dyson's April 28, 2013 break in.

104. Upon entry into the Plaintiff's home, the Service Providers changed the solid brass deadbolt and matching lower handle on the Plaintiff's front solid wooden door.

105. The Service Providers proceeded to remove the deadbolts and handles of two rear solid wood doors, damaging the frames of the doors by drilling additional holes to install new deadbolt locks and separate handles on both doors, thus damaging the real estate and other personal property therein, and stole personal property from the subject property.

106. Among the items the Service Providers stole from the subject property were:

a. Williams's circa 1991 Rolex stainless steel Datejust with jubilee bracelet;

b. Williams's 14K Scottish Rite 1 carat solitaire diamond ring;

c. Williams's Smith & Wesson .38 caliber nickel plated revolver;

d. three (3) Schlage solid brass deadbolt locks;

e. three (3) Schlage solid brass deadbolt door handles;

f. 10" slide compound mitre saw;

g. Rigid tile saw with the stand;

h. hand operated ceramic tile cutter;

i. Black & Decker variable speed drill;

j two (2) Milwaukee cordless drills in red plastic case;

k. Milwaukee cordless skill saw;

l. Ryobi Circular saw with laser;

m. Rigid 10" table saw;

n. Dremel compact circular saw;

o. Milwaukee cordless reciprocating saw with two (2) batteries in a red bag; and

p. Milwaukee reciprocating saw.

107. Among the items that the Service Providers irreparably damaged, destroyed, or discarded from the subject property were:

a. aluminum security door damaged off frame by forced entry;

b. solid wood front door from forced entry;

c. two (2) solid wood rear doors damaged by "drilling-in" dead bolt locks and stealing the solid brass locks and solid brass handles-(Florida room and Jacuzzi spa room);

d. bi-fold door in master bedroom ripped off tracks with multiple louvers damaged;

e. guest bathroom rack ripped off ceramic post, bar removed;

f. custom vertical blinds in master bedroom ripped off windows and stolen;

g. custom vertical blinds in home office ripped off windows and stolen;

h. all perishable meats, including lobster, shrimp, steak, chicken, fish, etc. stolen;

i. all foods, juices, condiments, jars in refrigerator stolen;

j. all meats and dishes cooked in Corning ware glass stored in the refrigerator thrown out, leaving the soiled Corning ware glass dishes on the countertop;

k. vegetables cooked pots and pans stored in the refrigerator thrown out and large soiled Corning ware dishes, pots placed on countertops.

108. At no point in time prior to the first or second break in did any of the Defendants contact Williams to ascertain whether he resided at the subject property, or to receive his authorization to enter the subject property.

109. At no point in time did any of the Defendants or Service Providers obtain a court order granting them possession of the subject property.

22

110. On May 17, 2013, Ms. Fonda Hancock, the Plaintiff's immediate neighbor, called the Plaintiff at work to inform him that the Defendants were <u>again</u> breaking into his property.

111. While en route to his home on May 17, 2013, Williams contacted the Daytona Beach Police to report the <u>second</u> break-in of his residence by the Defendants.

112. By the time Williams returned to his home on May 17, 2013, the Defendants had left the premises. The Daytona Beach Police had also left the residence. The Plaintiff had been locked out of his home by the Defendants, and could not open any door to enter his home.

113. To further add insult to injury, Nationstar again tacked on an additional $380.00 to the Plaintiff's existing mortgage balance for so-called "Property Preservation" fees to compensate the Service Providers for their May 17, 2013 illegal break-in of the Plaintiff's residence.

114. Despite the Plaintiff's demands, Defendants have failed to return, replace or pay him the reasonable value of his property they stole.

## FIRST ATTEMPTED BREAK-IN OF WILLIAMS'S RESIDENCE (MAY 25, 2013)

115. On May 25, 2013 the Plaintiff was inside his bedroom when he heard someone attempted to open his front door by inserting a key in his deadbolt while simultaneously attempting to force the door open by using force while pressing the door handle and shaking the key.

116. The Plaintiff immediately retrieved his firearm and walked to his front door. The Plaintiff opened his door to find a Hispanic male wearing a Mortgage Solutions, Inc. golf shirt, with a clip board and pen clinched under his arm.

117. Williams warned the MSI contractor that he would be harmed if he ever attempted to force entry to Williams's home again. Williams then instructed the MSI contractor to remain outside his property while he closed the door to go put away his firearm and get his cell phone to call the police.

118. Williams returned to his front door and made inquiry as to why the MSI contractor was at his home to begin with. The MSI contractor was Roberto Villacis, from Kissimmee, Florida. Villacis showed Williams a work order from Nationstar, instructing MSI to secure pictures of all of the rooms of the Plaintiff's home, as well as other tasks to be performed.

119. Williams again warned the MSI contractor that he was not in foreclosure, and to never again attempt to force entry into his home before any court judgment of foreclosure. Williams then proceeded to contact the Daytona Beach Police while in the presence of the MSI contractor.

120. Villacis informed Williams that he had a family and did not need any trouble. Villacis asked Williams if he could leave prior to the Daytona Beach Police arriving. Williams informed Villacis that he could leave, given the fact that Villacis gave to Williams his work, residence, and driver's license information. Williams also wrote the tag number of Villacis vehicle.

121. Police arrived at Williams's home and made a police report of the incident.

122. The following day, Williams arrived at Daytona Beach Police Headquarters to make yet another written complaint against Nationstar Mortgage, LLC and Mortgage Solutions, Inc.

## SECOND ATTEMPTED BREAK-IN OF WILLIAMS'S RESIDENCE (MAY 27, 2013)

123. While Williams was inside his home, he heard what sounded like a commercial diesel truck standing with its engine running outside his home.

124. When Williams looked out his living room window, it was the Defendants Solomon and Dyson in their moving van, parked outside the Plaintiff's home.

125. The Plaintiff immediately got his cell phone to contact the Daytona Beach Police. When the Plaintiff opened his front door and proceeded to stand at his porch while speaking to Police dispatch, he immediately made eye contact with Defendants Solomon and Dyson.

126. The Plaintiff immediately saw Defendants Solomon and Dyson speaking to each other inside the truck. Both men were laughing as they looked at the Plaintiff. To Williams's recollection, Defendant Solomon was driving the truck. Solomon proceeded to crank the moving van and leave the property.

127. The following day, Williams returned to Daytona Beach Police Headquarters, where he made yet another written complaint against Defendants Solomon and Dyson.

### COUNT II – TRESPASS TO REAL PROPERTY
### (ALL DEFENDANTS)

128. The Plaintiff restates and realleges paragraphs 2 through 21 and 62 through 127 as if fully set forth herein.

129. At all times relevant, Williams was the owner of the subject property and had a legal right to possession of the subject property.

130. Without consent or a right to possession, the Service Providers forcibly entered the subject property, changed the locks, disengaged the electricity, damaged the real property, and stole or removed personal property.

131. The Service Providers knew that Williams owned and occupied the subject property along with his family and the Service Providers acted with a reckless, willful, and conscious disregard for Landon Williams's property rights.

132. The Service Providers' forced entry and trespass upon the subject property interfered with Williams and his family's ownership, use, enjoyment, and possession of the premises.

133. The Service Providers' forced entry and trespass upon the subject property caused Landon Williams and his family loss and damage to property, great harm, humiliation, distress, and suffering.

134. It is the Service Providers' and Nationstar Mortgage, LLC's normal business practice to ignore the possessory and ownership rights of homeowners and withhold possession without obtaining a court order or searching the Recorder of Deeds to confirm rights to property.

**WHEREFORE**, Plaintiff LANDON L. WILLIAMS respectfully requests that this Honorable Court:

a. Enter judgment in her favor and against all Defendants;

b. Award Williams his actual damages in an amount to be determined at trial;

c. Award Williams punitive damages in an amount to be determined at trial;

d. Award Williams his reasonable attorney fees and costs to be paid to any attorney or attorneys he shall retain during this litigation; and

e. Award any other relief this Honorable Court deems equitable and just.

## COUNT III – TRESPASS TO PERSONAL PROPERTY/CHATTELS (ALL DEFENDANTS)

135. Williams restates and realleges paragraphs 2 through 21 and 62 through 127 as if fully set forth herein.

136. The Service Providers unlawfully entered the subject property and assumed dominion and control over Williams's personal property and chattels without his consent and to the exclusion of his rights.

137. All of the Service Providers' actions related to the forced entry and trespass upon the subject property caused Landon Williams and his family loss and damage to property, great harm, humiliation, mental distress, and suffering.

**WHEREFORE**, Plaintiff Landon L. Williams respectfully requests that this Honorable Court:

a. Enter judgment in his favor and against all Defendants;

b. Award Williams his actual damages in an amount to be determined at trial;

c. Award Williams punitive damages in an amount to be proven at trial;

d. Award Williams his reasonable attorney fees and costs to be paid to any attorney or attorneys he shall retain during this litigation; and

e. Award any other relief this Honorable Court deems equitable and just.

27

## COUNT IV – CONVERSION
## (ALL DEFENDANTS)

138. Williams restates and realleges paragraphs 2 through 21 and 62 through 127 as if fully set forth herein.

139. The Service Providers, without authority or consent, stole Williams's personal property.

140. The Service Providers remain in unlawful possession of Williams's personal property.

141. Williams has demanded the return of his personal property from the Service Providers.

142. The Service Providers have made no attempt to replace or return Williams's property, nor offered to pay him the equivalent monetary value.

**WHEREFORE**, Plaintiff Landon L. Williams respectfully requests that this Honorable Court:

a. Enter judgment in his favor and against all Defendants;

b. Award Williams his actual damages in an amount to be determined at trial;

c. Award Williams punitive damages in an amount to be determined at trial;

d. Award Williams his reasonable attorney fees and costs to be paid to any attorney or attorneys he shall retain during this litigation; and

e. Award any other relief this Honorable Court deems equitable and just.

## COUNT V – INTRUSION UPON SECLUSION
## (ALL DEFENDANTS)

143. Williams restates and realleges paragraphs 2 through 21 and 62 through 127 as if fully set forth herein.

144. Williams and his family had a reasonable expectation of privacy within their home.

145. The Service Providers intentionally and physically intruded upon the solitude and seclusion of Williams and his family's private affairs without authority or consent.

146. The Service Providers rummaged through Williams and his grandchildren's intimate personal belongings.

147. The Service Providers' acts of intrusion were highly offensive to Williams, his family, and all like-minded reasonable individuals.

148. As a result, Williams has suffered extreme emotional distress.

**WHEREFORE**, Plaintiff Landon L. Williams respectfully requests that this Honorable Court:

a. Enter judgment in his favor and against all Defendants;

b. Award Williams his actual damages in an amount to be determined at trial;

c. Award Williams punitive damages in an amount to be determined at trial;

d. Award Williams his reasonable attorney fees and costs to be paid to any attorney or attorneys he shall retain during this litigation; and

e. Award any other relief this Honorable Court deems equitable and just.

## COUNT VI – VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (ALL DEFENDANTS)

149. Williams restates and realleges paragraphs 2 through 21 and 62 through 127 as if fully set forth herein.

150. Williams is a consumer as defined within the Florida Deceptive and Unfair Trade Practices Act, Section 501.203(7), Florida Statutes (2016).

151. All Defendants are engaged in commerce in the state of Florida with regard to Williams and the subject property.

152. The Service Providers specialize in property preservation and facilitating debt collection, which is within the stream of commerce and one of the collection tools utilized by mortgage loan servicers in their regular course of business.

153. The Service Providers broke into Landon L. Williams's home and dispossessed Williams of his property without a legal or factual basis for doing so.

154. It was unfair for the Defendants to lock Williams out of his own property, use criminal intimidation in an attempt to force Williams to abandon possession of his own property, and attempt to criminally bully Williams into an expedited foreclosure process.

155. Moreover, it was deceptive for Nationstar Mortgage, LLC to direct and induce Landon L. Williams to stop making monthly mortgage payments in 2012, and then illegally attempt to take possession of his home through the Service Providers after Williams ceased monthly payments, as directed by Nationstar Mortgage, LLC.

30

156. It is the regular business practice of the Service Providers and Nationstar Mortgage, LLC to ignore the possessory and ownership rights of homeowners prior to a foreclosure being filed or obtaining a court order for pre-judgment possession.

157. The Defendants intended Williams to rely on their deceptive and unfair acts, and Williams did in fact rely on the Defendants deceptive and unfair acts.

158. Even after the Defendants were put on actual notice that Williams in fact resided at his home; the Defendants, in an act of sheer defiance, returned multiple times for the purpose of subsequent break-ins into Williams's home.

159. An award of punitive damages is appropriate because Defendants' conduct described above was outrageous, willful and wanton, and showed a reckless disregard for the liberty as well as property rights of Williams and his family.

160. Adding insult to injury, Nationstar has illegally added "property preservation" fees as well as "attorney" fees, exceeding the sum of $2,000.00 to Williams existing mortgage balance. To reiterate, at no time material was Williams's mortgage in foreclosure.

**WHEREFORE**, Plaintiff Landon L. Williams respectfully requests that this Honorable Court:

a. Enter judgment in his favor and against all Defendants;

b. Award Williams his actual damages in an amount to be determined at trial;

c. Award Williams punitive damages in an amount to be determined at trial;

d. Award Williams his reasonable attorney's fees and costs to be paid to any attorney or attorneys he shall retain during this litigation pursuant Section 501.2105, Florida Statutes (2016); and

e. Award any other relief this Honorable Court deems equitable and just.

## COUNT VII – BREACH OF CONTRACT
## (NATIONSTAR MORTGAGE, LLC)

161. Williams restates and realleges paragraphs 2 through 21 and 62 through 127 as though fully set forth herein.

162. To prevail on a breach of contract claim under Florida law, plaintiff must show: (a) the existence of a valid and enforceable contract; (b) substantial performance by the plaintiff; (c) a breach; and (d) resulting damages.

163. Williams has a valid and enforceable mortgage contract with Nationstar Mortgage. *See PLAINTIFF'S FILING OF Exhibit "A"* as an accompanying filing of a true and correct copy of Williams's mortgage.

164. Williams substantially complied with the terms and conditions of the subject note and mortgage.

### a. Nationstar Mortgage Breached its Duty of Good Faith and Fair Dealing

165. In August, 2012, Nationstar directed and induced Williams to stop making monthly payments on his mortgage loan.

166. Nationstar informed Williams that they could effectuate a loan modification <u>only</u> if Williams missed monthly payments as directed by Nationstar.

167. Nationstar breached its duty of good faith and fair dealing when it induced Williams to stop making monthly mortgage payments, and then committed the torts and deceptive practices described herein in response to said missed payments.

**b. Nationstar Breached the express terms of the Subject Mortgage and Note**

168. Under the terms of the subject mortgage, Nationstar is required to comply with federal and state law. *See PLAINTIFF'S FILING OF Exhibit "A"* as an accompanying filing of a true and correct copy of Williams's mortgage.

169. The subject mortgage and Florida law require that Williams maintain exclusive possession to the subject property while he remains on title. *See PLAINTIFF'S FILING OF Exhibit "A"* as an accompanying filing of a true and correct copy of Williams's mortgage, page 4 of 16.

170. The subject mortgage required that Nationstar take reasonable steps to determine whether the subject property is vacant or abandoned before taking any action to protect its interest. **Id. at ¶ 7.**

171. Nationstar failed to take any steps to determine that Williams continued to occupy the subject property, and that the subject property was not vacant or abandoned, prior to directing the Service Providers to enter the subject property.

**WHEREFORE**, Plaintiff Landon L. Williams respectfully requests that this Honorable Court:

a. Enter judgment in his favor and against Nationstar Mortgage, LLC;

b. Find that Nationstar Mortgage, LLC materially breached the mortgage contract;

c. Award Williams his actual damages to be determined at trial;

d. Award Williams his reasonable attorney fees and costs to be paid to any attorney or attorneys he shall retain during this litigation;

e. Order the deletion of all adverse credit reporting related to the loan; and

f. Award any other relief this Honorable Court deems equitable and just.

## COUNT VIII – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (FIELD ASSET SERVICES, SOLOMON, AND DYSON)

171. Williams restates and realleges paragraphs 2 through 21 and 62 through 127 as though fully set forth herein.

173. The Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., imposes civil liability upon debt collectors.

174. The Servicer Providers qualify as debt collectors under the FDCPA §§ 1692a(6) and 1692f(6) as each uses an instrumentality of interstate commerce or the mails to collect debts and enforce security interests.

175. The Service Providers regularly collect debts, enforce security interests, and facilitate debt collection.

176. The Service Providers are in the business of securing properties, changing locks, facilitating debt collection, and facilitating communications between borrows and mortgage lenders and others in the foreclosure industry.

177. The Service Providers arrange field services, debt collection, and default-related services for homes upon which Nationstar Mortgage, LLC is seeking to collect a debt.

178. None of the Service Providers are licensed as general contractors under Florida Statutes, and therefore are not permitted to change locks or make modifications to real property in Florida under existing Florida law.

179. The Service Providers changed the locks at the subject property for Nationstar Mortgage, LLC.

180. The Service Providers stole and/or destroyed Williams's real property and personal property.

181. The Service Providers acquired the authority from Nationstar Mortgage, LLC to collect a consumer debt owed to Nationstar Mortgage, LLC by performing services at the subject property.

182. The Service Providers performed all acts complained of without any right to possession of the subject property or an order from a court.

183. The Service Providers dispossessed Williams and his family from their home without reason and without regard for his rights.

184. The Service Providers permanently discarded and disposed of Williams's personal property, some of which can never be replaced, and irreparably damaged his real property.

### a. Violation of § 1692e

185. The Service Providers violated § 1692e by falsely claiming that they had a right to enter, possess, and change the locks to the subject property.

186. The Service Providers posted notifications on the subject property stating that it was vacant or abandoned and that Nationstar Mortgage, LLC and Field Asset Services, LLC had the right to enter the subject property.

187. After the Service Providers changed the locks to the subject property, the Service Providers possessed the keys and willfully restricted Williams's access to the subject property.

188. The Service Providers' actions were in furtherance of efforts to restrict access to the subject property and facilitate the collection of a debt on behalf of Nationstar Mortgage, LLC.

### b. Violation of § 1692d

189. The Service Providers violated § 1692d by engaging in conduct to terrorize, harass, oppress, and abuse Landon L. Williams in connection with the subject debt owed to Nationstar Mortgage, LLC.

190. The Service Providers engaged in highly abusive and oppressive conduct by forcibly terrorizing Williams and his family, and by damaging, destroying, and stealing Williams's belongings and real property.

### c. Violation of § 1692f

191. The Service Providers violated § 1692f by using unfair or unconscionable means to collect or attempt to collect a debt.

192. The Service Providers' unauthorized entry upon the subject property on behalf of Nationstar Mortgage, LLC was in furtherance of efforts to collect debts for Natonstar Morgtage, LLC.

193. The Service Providers were not legally permitted to change locks in the State of Florida as the Service Providers are not permitted to change locks on residences still occupied by the mortgagor.

194. The Service Providers violated § 1692f(6)(A) by taking or threatening to take non-judicial action and employing self-help to dispose of property when there was no present right to possession of the property through Nationstar's security interest.

195. The Service Providers systemized their process of monitoring mortgage payments, but failed to safeguard against premature possession of properties before foreclosure or obtaining a valid court order for possession.

196. Nationstar has a practice whereby "property servicers" such as the Service Providers were tasked to perform services prematurely or automatically after a borrower became delinquent on mortgage payments.

197. Service Providers automatically arranged to provide property services to homes at risk of foreclosure without verifying whether a foreclosure or rightful transfer of possession had taken place.

### d. Violation of § 1692f, e, and g(a)

198. The Service Providers violated §§ 1692f, e, and g(a) by reporting and assessing fees against Landon L. Williams and his property that were not authorized by the mortgage contract or the law.

199. The Service Providers violated § 1692f(1) by seeking to collect property inspection and other corporate fees, and impose fees and costs for alterations done to property that were not expressly authorized by the subject mortgage or by Florida law.

200. The Service Providers reported costs and fees to Nationstar Mortgage, LLC which Nationstar assessed against Williams and his property for the wrongful debt collection actions.

201. All of the Service Providers' actions caused Williams and his family loss and damage to property, great harm, humiliation, mental distress, and suffering.

**WHEREFORE**, Plaintiff Landon L. Williams respectfully requests that this Honorable Court:

a. enter judgment in his favor and against Field Asset Services, Mark A. Solomon, and Dustin Dyson;

b. declare that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

c. award Williams statutory and actual damages in an amount to be determined at trial;

d. Order the deletion of all adverse credit reporting related to the loan;

e. award Williams costs and reasonable attorney fees to be paid to any attorney or attorneys he shall retain during this litigation, as provided under 15 U.S.C. § 1692k; and

f. Award any other relief as this Honorable Court deems just and appropriate.

## COUNT IX – DEFENDANTS' VIOLATION OF 42 U.S.C. §1981
### (ALL DEFENDANTS)

202. Williams restates and realleges paragraphs 2 through 21 and 62 through 127 as though fully set forth herein.

203. Landon L. Williams is an American of African Ancestry.

204. There exists a contract between Williams and Nationstar Mortgage, LLC.

205. The Defendants through their illegal actions on April 28, 2013, May 17, 2013, May 25, 2013 and May 28, 2013 have acted both individually and in concert to interfere

with Williams federally protected right to contract with Defendant Nationstar Mortgage, LLC.

206. The individual defendants are Caucasian or are of European ancestry; whereas Williams is an American of African ancestry.

207. The Defendants' proscribed actions were motivated, in part, out of racial animus against Williams, a man of African ancestry.

208. The Defendants proscribed actions were furthermore motivated by a desire to terrorize, harass, and intimidate Williams into abandoning his property, thus breaching his contract with Nationstar Mortgage, LLC.

209. The Defendants' individual and collective actions to materially interfere with Williams's right to contract are so extreme and outrageous as to exceed the bounds of decency and civility.

210. The Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff Landon L. Williams respectfully requests that this Honorable Court:

a. Enter judgment in his favor and against all Defendants;

b. Award Williams his actual damages in an amount to be determined at trial;

c. Award Williams punitive damages in an amount to be determined at trial;

d. Award Williams his reasonable attorney fees and costs to be paid to any attorney or attorneys he shall retain during this litigation; and

e. Award any other relief this Honorable Court deems equitable and just.

## COUNT X – ACTION FOR AN ACCOUNTING
## (NATIONSTAR MORTGAGE, LLC)

211. Williams restates and realleges paragraphs 2 through 21 and 62 through 127 as though fully set forth herein.

212. This is an action for an accounting.

213. Since Nationstar assumed servicing of Williams's mortgage, Nationstar has taken the liberty to impose unwarranted fees, surcharges, late charges, payment reversals and other penalties on Williams's mortgage.

214. Most recently, Nationstar reversed Williams's timely December 2016 mortgage payment a total of six (6) times, before Defendant Nationstar choose to subtract the Plaintiff's timely mortgage payment altogether.

215. The Plaintiff has suffered late fees, penalties and other unwarranted charges as a direct result of Nationstar's inability to properly account for and apply Williams's mortgage payments over the period of its mortgage servicing.

216. Moreover, Williams has suffered late charges for the months of December, 2016; January, 2017; and February, 2017 each of which are unwarranted, given the fact that Williams made timely payment of his mortgage to Nationstar.

**WHEREFORE**, Plaintiff Landon L. Williams respectfully requests that this Honorable Court:

a. Order a full and complete accounting of his mortgage payments with Nationstar Mortgage, LLC;

b. award actual damages to the Plaintiff, consisting of all fees, charges and penalties improperly made by Nationstar Mortgage, LLC to the Plaintiff's mortgage account;

   c.  award Williams his reasonable attorney fees and costs to be paid to any attorney

       or attorneys he shall retain during this litigation; and

   d.  award any other relief this Honorable Court deems equitable and just.

## **JURY DEMAND**

   The Plaintiff requests a trial by jury of all claims that can be so tried.

Dated ~~October~~ February 24, 2017

Respectfully submitted,

Landon L. Williams, pro se
Plaintiff
Post Office Box 9339
Jacksonville, FL 32208-0339
(904) 386-8703

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing has been furnished to David

Applegate, counsel for Defendant Nationstar Mortgage, LLC, 50 North Laura Street,

Jacksonville, FL 32202 by United States mail, this 24th day of February, 2017.

**I HEREBY CERTIFY** that an original Summons and copy of the Amended

Complaint shall be personally served by State of Florida certified process server, on the

following persons or entities:

Field Asset Services, LLC
c/o Corporation Service Company, Registered Agent
1201 Hays Street
Tallahassee, FL 32301-2525

Mark A. Solomon
809 Patterson Drive
Daytona Beach, FL 32119

Dusten Dyson
356 Kumquat Lane
Port Orange, FL 32127


Landon L. Williams, pro se
Plaintiff