**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**CASE NO. 3:16-cv-01283-HES-PDB**

**LANDON L. WILLIAMS,**

        **Plaintiff,**

**v.**

**NATIONSTAR MORTGAGE, LLC,**

        **Defendant.**
_____/

**THIRD AMENDED COMPLAINT**

COMES NOW, Plaintiff, Landon L. Williams, by and through undersigned counsel, pursuant to [Ecf. 114], files his Third Amended Complaint and sues Defendant Nationstar Mortgage, LLC, and in support thereof alleges the following:

**INTRODUCTION**

1. Plaintiff sues Defendant Nationstar Mortgage, LLC ("Nationstar"), for damages and to enjoin Nationstar's practice of making unsolicited phone calls to Plaintiff's cellular and landline telephones without Plaintiff's consent and with the use of an automatic telephone dialing system and/or pre-recorded voice in violation of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227.

2. Plaintiff also sues for damages breach of contract, violations of the Florida Deceptive and Unfair Trade Practices Act, and an accounting. Additionally, Plaintiff seeks an accounting

of his mortgage while serviced by Nationstar. Plaintiff has complied with all contractual or statutory conditions precedent or said conditions have been waived by Nationstar.

3. Part I of this Third Amended Complaint addresses Nationstar's violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, through its repeated and unsolicited telephone calls to Plaintiff's cellular and landline telephones.

4. By making the telephone calls at issue in this Complaint, Nationstar caused actual harm to Plaintiff.

5. Nationstar routinely made and makes said telephone calls despite the fact that Plaintiff never provided consent to be called on the specific telephone numbers that the Nationstar actually called, and Plaintiff never provided consent to be called by an automatic telephone dialing system or a prerecorded voice.

6. In response to Nationstar's unlawful conduct, Plaintiff brings the instant lawsuit seeking an injunction requiring Nationstar to cease all unsolicited telephone calling activities and awarding Plaintiff statutory damages against Nationstar under the TCPA, together with costs and reasonable attorney's fees.

7. Part II of this Third Amended Complaint addresses Plaintiff's claims against the Defendant for damages as a result of violation of Florida's Deceptive and Unfair Trade Practices Act; breach of contract; and a demand for an accounting from Nationstar.

## JURISDICTION, VENUE & PARTIES

8. Plaintiff Landon L. Williams ("Plaintiff") resides within the Middle District of Florida, he is and was a citizen of Florida at all times material to the allegations herein, he is an American citizen of African descent, and he is a disabled American. Plaintiff owns a home with a mortgage serviced by Defendant Nationstar from 2011 to present.

9. Defendant Nationstar Mortgage, LLC ("Nationstar"), is a Delaware corporation with its principal place of business in Texas. Nationstar does business and holds and services mortgage loans throughout the United States, including the State of Florida and in the Middle District of Florida.

10. Venue is proper pursuant to 28 U.S.C. § 1391 as Plaintiff resides within the Middle District of Florida, the subject property to this action is located within the Middle District of Florida, and a substantial part of the events or omissions giving rise to the claims occurred within the Middle District of Florida and Volusia County.

11. Jurisdiction is proper under 28 U.S.C. § 1331, federal question jurisdiction, as the action arises under the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227.

12. Alternatively, jurisdiction is proper under 28 U.S.C. § 1343.

13. Moreover, jurisdiction is proper over Plaintiff's state law claims against Defendants pursuant to 28 U.S.C. § 1367 as such claims are related to the claims under this Court's original jurisdiction.

14. In *Wright, et al. v. Nationstar Mortgage LLC*, No. 14-cv-10457, Nationstar is a defendant in a lawsuit for placing autodialed and prerecorded calls to consumers' cellular telephones without said consumers' consent. The lawsuit alleges that Nationstar violated the

Telephone Consumer Protection Act because consumers did not consent to receiving these telephone calls. Nationstar denies the allegations, denies that it violated any law, and contends that it acted with the consumers' consent. The court decided that a settlement of the *Wright* lawsuit would include a class of "all individuals in the United States for whom Nationstar Mortgage had in its records a cellular telephone number, as of October 14, 2015." However, no court has determined the merits of such action as the parties to the *Wright* litigation appear to have entered into a settlement agreement in order to avoid time-consuming and expensive litigation.

15. Plaintiff was identified as an eligible class member who was materially and irreparably harmed by Nationstar's intentional violation of the Telephone Consumer Protection Act in *Wright, et al. v. Nationstar Mortgage LLC*.

16. Through the *Wright* federal class action lawsuit, Plaintiff Landon L. Williams timely exercised his right to seek a private federal action against Nationstar Mortgage, LLC, by submitting an "opt-out" letter to the class action administrator via United States Postal Service first class certified mail, thereby allowing Plaintiff Landon L. Williams to proceed individually against Defendant Nationstar for violation(s) of both federal and any State of Florida consumer protection law.

## **GENERAL ALLEGATIONS: PART I**

17. The Telephone Consumer Protection Act ("TCPA") was passed by the United States Congress in 1991 and is codified as 47 U.S.C. § 227. The TCPA limits the use of automatic telephone dialing systems, artificial or pre-recorded voice messages, SMS text messages, and faxes.

18. Specifically, with respect to calls made to cellular telephones, the TCPA prohibits the use of any automated telephone dialing system or any artificial or prerecorded voice unless the recipient expressly consents to the receipt of such calls on the recipient's cellular telephone.

19. With respect to calls made to residential telephones, the TCPA prohibits the use of any artificial or prerecorded voice to deliver a message unless the recipient expressly consents to the receipt of such calls on the recipient's residential telephone.

20. According to the Federal Communications Commission—the agency tasked with promulgating the implementing regulations of the TCPA—to be considered "express consent," such consent must: (i) be in writing; (ii) be signed by the person providing the consent; (iii) specify the telephone number to which the person is consenting to be called; and (iv) clearly authorize the calling party to use an automated dialing system or prerecorded voice. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, FCC Report and Order, CG Docket No. 02-278 (Feb. 15, 2012) ¶ 33, Appendix A, at 34.

21. Nationstar is a "non-bank residential mortgage servicer" that provides "a range of services across the residential mortgage product spectrum." In general, a mortgage servicer is a third party that is hired by an investor or owner of a loan to perform the mortgage servicing

function with respect to a loan or group of loans (called a portfolio). Mortgage servicers send out bills, collect payments, allocate the monies collected in accordance with the servicing agreement, calculate escrow, and, in certain circumstances, engage in loss mitigation efforts and foreclosure and foreclosure alternatives.

22. Nationstar placed repeated telephone calls to Plaintiff and other consumers who never provided Nationstar (or any third party associated with the mortgage) with prior express consent to call their telephone numbers.

23. Nationstar's calls were made for the purpose of collecting alleged debts, to purportedly "remind" the Plaintiff and other consumers to pay their mortgages, and for potentially other, non-debt collection reasons.

24. Nationstar made telephone calls to Plaintiff on a daily basis and often, multiple times per day, seven days a week.

25. In making the calls at issue in this Third Amended Complaint, Nationstar and/or its agents used an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used by Defendant and/or its agents has the capacity to generate and store random numbers, or receive and store lists of telephone numbers, and to dial those numbers, en masse, in an automated fashion without human intervention. The automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, which means that it is capable of making numerous phone calls simultaneously and automatically connecting answered calls to then available callers or recordings and disconnecting the rest of the calls (or placing them on hold). Accordingly, consumers receiving calls from

Nationstar and/or its agents are frequently confronted with dead air or the sound of the call being disconnected (otherwise known as an "abandoned call").

26. Nationstar admits that it has been using predictive dialing technology since at least as early as 2012. In Nationstar's Form S-1, dated February 24, 2012, Nationstar states, "[i]n the account resolution group, we use a combination of predictive dialer technology and account level assignments to contact the borrowers."

27. Nationstar's particular automated telephone dialing system is known as the "Avaya Proactive Contact" system. According to Avaya Inc., the "Avaya Proactive Contact" system is a "predictive dialing system" that uses "the most advanced dialing algorithms available to optimize your outbound communication campaigns." In particular, the "Avaya Proactive Contact" system enables Nationstar to "set up campaigns and manage multiple dialers across [its] organization…[and to] define and manage various outbound campaigns for marketing, sales and accounts payable all from a single system."

28. According to Avaya Inc., the "Avaya Proactive Contact" system is built with several features that enable Nationstar to "comply with even the most restrictive regulations." Despite having this capability, however, Nationstar does not utilize the compliance functionality of its "Avaya Proactive Contact" system to ensure that the company is "adhering to strict regulatory compliance." Instead, Nationstar routinely violates the TCPA by using its "Avaya Proactive Contact" system to call Plaintiff's and other mortgagors' telephones without having obtained the relevant and required express consent to do so.

29. In the *Wright* federal class action litigation, Nationstar's records contain evidence of the fact that Nationstar repeatedly violated the TCPA by using its "Avaya Proactive Contact"

automated telephone dialing system to call class members' telephones without having obtained the class members' express consent to do so. For example, Nationstar's records identify the exact date and time of each and every call made by Nationstar and whether the call was made by Nationstar's "Avaya Proactive Contact" automated telephone dialing system. The specific calls that were made by Nationstar's "Avaya Proactive Contact" automated telephone dialing system are identified within Nationstar's records by the labels "AVAYA," "PRE RECORDED DIALER MESSAGE," "PRDM," "CALL ANSWERED NO POSITIVE VOICE ID DETECTED," or "CALL DROPPED FROM DIALER HOLD, NO AGENT AVAIL."

30. Nationstar's calls to cellular and residential landline phones also feature artificial or pre-recorded messages instead of live operators.

31. Making Nationstar's calls all the more problematic, the pre-recorded messages do not and did not provide Plaintiff with an option to stop the calls. To speak with a live operator and request that the calls stop, Plaintiff and any other affected consumer must provide personally identifying information such as a social security number.

32. This barrier is particularly problematic because Nationstar places unwanted telephone calls to consumers who do not have a mortgage with or are not serviced by Nationstar.

33. Even when consumers such as Plaintiff were called and connected to a live operator—and even when Plaintiff made explicit written and verbal requests to Nationstar to stop sending the harassing and intimidating telephone calls—the calls continued in direct contravention to said requests.

34. Nationstar was and is aware that the above described telephone calls were being made to Plaintiff without his express consent to receive said telephone calls. Nationstar did not have the express written consent to contact Plaintiff at any time under Federal law. Moreover, any possible express written consent as alleged by Nationstar was revoked in writing by Plaintiff prior to any calls made to him during the time period.

35. Complaints regarding Nationstar's conduct have not been limited to Internet postings. In fact, Nationstar has been sued multiple times in various jurisdictions in individual federal civil action actions for violating the TCPA by routinely placing calls with an automated telephone dialing system or prerecorded voice to Plaintiff and separate class members' phones from the *Wright* litigation without the required express consent.

36. The fact that Nationstar has been sued numerous times in individual actions based on the fact that Nationstar has routinely placed calls with an automated telephone dialing system or prerecorded voice to cellular and residential phones without the express consent to do so very clearly demonstrates that Nationstar's continued violation of the TCPA is "knowing" and "willful."

### FACTUAL ALLEGATIONS REGARDING PLAINTIFF: PART I

37. As of the date of the filing of this third amended complaint, Nationstar no longer services Plaintiff's mortgage.

38. From August 2011 through November of 2013, Nationstar placed numerous telephone calls to Plaintiff's residential phone without having obtained Plaintiff's express consent.

39. Plaintiff has received the aforementioned telephone calls from telephone numbers, including 888-811-5279, 888-480-2432, and other toll-free numbers emanating from the

State of Texas. These telephone numbers belong to and connect directly to Defendant Nationstar Mortgage, LLC.

40. Each of these telephone calls was initiated with either ATDS and a pre-recorded voice, or a manually dialed telephone call from a Nationstar collection's representative. Each of the telephone calls were made to "remind" Plaintiff to pay his mortgage, even though Plaintiff demanded via telephone and in writing that Nationstar stop making such harassing and intimidating daily telephone calls.

41. Astoundingly, Plaintiff has received at least over *four hundred (400)* separate telephone calls from Nationstar, many of which were made with an ATDS and a pre-recorded voice, since August of 2011 through late 2013.

42. Plaintiff never consented to receiving said telephone calls on his cellular phone.

43. Nationstar was also fully aware that the above described telephone calls were being made to Plaintiff's residential telephone number without his prior express consent to receive them, to which Plaintiff never consented.

44. Nationstar's actions in making the above described telephone calls to Plaintiff's cellular and landline telephone numbers without Plaintiff's express consent are evidence of Nationstar's determination to intimidate, harass, and terrorize Plaintiff as part of Nationstar's illegal pre-foreclosure servicing activities.

### COUNT I: VIOLATION OF THE TCPA, 47 U.S.C. § 227
**(Against Nationstar)**

45. Plaintiff incorporates the foregoing allegations in ¶¶1-44 by reference.

46. Defendant Nationstar made, or directed to be made, unsolicited telephone calls to cellular and landline telephone numbers belonging to the Plaintiff without his prior express consent to receive such calls.

47. Nationstar and/or its agents made the telephone calls (1) using equipment that had the capacity to store, generate, or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, en masse, and/or (2) using a prerecorded or artificial voice.

48. Nationstar used equipment that made, or had made on its behalf, the telephone calls to Plaintiff and other consumers simultaneously and without human intervention. Specifically, Nationstar uses an Avaya predictive dialer and telephone system, among potentially other brands of automatic telephone dialing systems.

49. By making, or having made on its behalf, the unsolicited telephone calls to Plaintiff's cellular telephone without Plaintiff's prior express consent, and by using an ATDS or pre-recorded voice to make those calls, Nationstar has violated 47 U.S.C. §§ 227(b)(1)(A)(iii) and 227(b)(1)(B).

50. As a result of Defendant's unlawful conduct, Plaintiff has suffered injury in fact. Specifically, Plaintiff has suffered invasion of privacy and quiet enjoyment, compensatory damages, including $500 in statutory damages for each such violation of the TCPA, pursuant to § 227(b)(3)(B), plus injunctive relief to stop the calls.  The damages suffered by Plaintiff are fairly traceable to the Defendant's unlawful conduct.

51. Plaintiff has complied with all statutory or contractual conditions precedent or said conditions have been waived by Defendant.

52. Plaintiff's injuries in fact are likely to be redressed by a favorable judicial decision. Should the Court determine that Nationstar's conduct was willful and knowing, the Court may, pursuant to section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff.

**WHEREFORE**, Plaintiff individually prays for the following relief:

a. An award of actual and statutory damages;

b. An award of nominal damages for violation of Plaintiff's rights.

c. Treble statutory damages for Nationstar's willful and knowing conduct;

d. An injunction requiring Defendant Nationstar Mortgage, LLC, to cease all unsolicited telephone calling activities upon Plaintiff;

e. An award of Plaintiff's costs and reasonable attorney's fees; and

f. Any other and further relief that the Court deems reasonable and just.

## FACTUAL ALLEGATIONS REGARDING PLAINTIFF: PART II

53. On February 26, 2007, Plaintiff executed a mortgage and note (the "subject loan") in favor of SunTrust Mortgage, Inc., in the amount of $116,800.00, for the purchase of Plaintiff's property and home, located at 836 Vernon Street, Daytona Beach, Florida 32114 (the "subject property").

54. Plaintiff has resided continuously at the subject property, without interruption, since closing on his residential home purchase on February 26, 2007.

55. At some point after its origination, Nationstar purportedly acquired the servicing rights and ownership of the subject loan.

56. On August 31, 2012, Plaintiff's 3-year State of Florida non-renewable temporary educator's license expired. As such, the Plaintiff could not continue teaching employment with Duval County Public Schools.

57. Plaintiff also worked as a domestic violence Facilitator with Hubbard House, Inc. Based on the substantial decrease in Plaintiff's monthly income, effective September 1, 2012, Plaintiff contacted Defendant Nationstar Mortgage in August of 2012 in order to seek a modification of his mortgage payment.

58. In August 2012, several Nationstar loan representatives assisted Plaintiff. Specifically, Nationstar's loan representatives included Allison Harass, who instructed Plaintiff that in order to receive a mortgage modification, Plaintiff "should miss three to four consecutive mortgage payments" in order to "show proof of a substantial hardship," which would thus qualify Plaintiff for a mortgage modification. Subsequently, in early August of 2012, Plaintiff verified the material representations he relied upon from Allison Harass with Nationstar loan representatives Caroline Rich and Ms. Ijay Nkele.

59. In August 2012, Plaintiff made full application for a mortgage modification with Nationstar, supplying Nationstar with employment, income, credit, and checking/savings account documentation. At no point was Plaintiff's property abandoned.

60. In Plaintiff's August 2012 application for a loan modification, Plaintiff attested under penalty of perjury that the subject property was his primary residence. At all times material, Plaintiff did, in fact, reside at the subject property.

61. Based on Allison Harass' material representations, as well as material representations of other Nationstar loan representatives, including Caroline Rich and Ms. Ijay Nkele, Plaintiff

did as he was instructed, and he did not make a mortgage payment beginning in the month of September, 2012.

62. In February, 2013, Plaintiff received a denial letter from Nationstar regarding Plaintiff's August 2012 application for a loan modification.

63. On its written Fair Credit Reporting Act/Notification of Credit Denial, Nationstar stated as its reason for Plaintiff's loan denial, "under Federal National Mortgage Association ("FNMA") guidelines an applicant is ineligible for a loan modification if only source of income is from part time employment."

64. At the time Plaintiff applied via telephone for a mortgage modification with Nationstar, Plaintiff made it clear to Ms. Allison Harass, and every other Nationstar loan representative he spoke with, that he was employed part-time with Hubbard House, Inc., although Plaintiff earned a gross income in excess of $300 weekly from said employment. Despite Plaintiff's clear notification to Nationstar regarding his employment, Nationstar took six (6) months to inform Plaintiff of his ineligibility for a loan modification due to his part-time employment.

65. Plaintiff has complied with all contractual or statutory conditions precedent or said conditions have been waived by Nationstar.

## COUNT II: VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FDUTPA), FLORIDA STATUTES § 501.201, *et seq.* (Against Nationstar)

66. Plaintiff incorporates the allegations contained in ¶¶1-44 as fully set forth herein.

67. Plaintiff is a consumer, as defined under section 501.203(7), Fla. Stat.

68. Defendant was engaged in commerce in the state of Florida with regard to Plaintiff and the subject property of the present action.

69. Nationstar is not otherwise exempt under §501.201 et. seq., Fla. Stat.

70. Nationstar deceptively directed and induced Plaintiff to stop making monthly mortgage payments in 2012, and Nationstar subsequently attempted to illegally take possession after Plaintiff ceased making monthly payments, as directed by Nationstar.

71. Adding insult to injury, Nationstar subsequent to the loan modification, unfairly and/or deceptively illegally charged Plaintiff with "property preservation" fees as well as attorney's fees related to a foreclosure and late fees. At no time material was Plaintiff's mortgage ever in foreclosure. Plaintiff suffered actual damages as result of Nationstar's violation of FDUPTA by charging these improper fees.

72. Nowhere in the mortgage is the mortgagee allowed to tack on attorney's fees unrelated to the property or any foreclosure of the property, nor can Defendant charge improper late fees and/or property inspection fees.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court:

a. Enter judgment in Plaintiff's favor and against Nationstar.

b. Award Plaintiff actual damages in an amount to be determined at trial in addition to prejudgment interest;

c. Award Plaintiff reasonable attorney's fees and costs pursuant to section 501.2105, Florida Statutes, and

d. Award any other relief this Honorable Court deems equitable and just.

## COUNT III:  BREACH OF CONTRACT

**(Against Nationstar)**

73. Plaintiff incorporates the allegations contained in ¶¶1-44 and as full set forth herein.

74. To prevail on a breach of contract claim under Florida law, a plaintiff must show: (a) the existence of a valid and enforceable contract; (b) substantial performance by the plaintiff; (c) a breach; and (d) resulting damages.

75. Plaintiff had a valid and enforceable contract with Nationstar's assignor by virtue of Plaintiff's mortgage with Nationstar's assignor.

76. Plaintiff substantially complied with the terms and conditions of the subject note and mortgage.

77. Plaintiff has complied with all contractual or statutory conditions precedent or said conditions have been waived by Nationstar.

78. Nationstar failed to properly account for payments made by Plaintiff under the note and mortgage, causing damages to Plaintiff.  Specifically, Nationstar did not give Plaintiff credit for payments made under the mortgage and charged Plaintiff improper late fees. Moreover, Nationstar gave false information to credit reporting agencies as a result of the failure to properly credit Plaintiff for payments. Plaintiff has suffered late fees, penalties, interest charges, and other unwarranted charges as a direct result of Nationstar's inability to properly account for and apply Plaintiff's mortgage payments over the period of its mortgage servicing.

79. In the year 2016, the Plaintiff $769.72 was entitled to the sum of $769.72 as a refund of monies he paid into his Nationstar escrow account for insurance and property taxes.

80. By law, Nationstar is required to refund to the mortgagor any funds it receives which are in excess of the amounts required by law to be held in a separate account for payment of property taxes and property/casualty insurance.

81. Plaintiff was notified by counsel for Nationstar that Nationstar would refund the sum of $769.72 of surplus escrow account money directly to the Plaintiff

82. To date, Nationstar has either failed and/or refused to refund the Plaintiff's 2016 $769.72 escrow surplus.

83. In 2016, Nationstar received the sum of $42,966 from the Florida Hardest Hit Fund ("HHF"), to be fully applied towards the Plaintiff's outstanding mortgage balance based on qualifications.

84. In a series of payment reversals throughout the fall of 2016, Nationstar has either failed or refused to apply the entire $42,966 Florida Hardest Hit Fund payment to the Plaintiff's outstanding loan balance.

85. Nationstar determined that it failed to properly apply $658.10 of the Plaintiff's 2016 mortgage payments to the Plaintiff's mortgage balance.

86. Plaintiff was notified by Nationstar that it would refund the sum of $658.10 of unapplied payment money directly to the Plaintiff.

87. To date, Nationstar has either failed and/or refused to refund the $658.10 in unapplied mortgage payment money it promised to refund the Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court:

a. Enter judgment in Plaintiff's favor and against Nationstar.

b. Declare that Nationstar materially breached the mortgage contract;

   c. Award Plaintiff actual damages to be determined at trial in addition to prejudgment interest;

   d. Award Plaintiff reasonable attorney's fees and costs pursuant to the mortgage, note and mortgage modification;

   e. Order the deletion and/or reversal of all adverse credit reporting related to the subject loan; and

   f. Award any other relief this Honorable Court deems equitable and just.

## COUNT IV:  ACTION FOR AN ACCOUNTING
### (Against Nationstar)

88. Plaintiff incorporates the allegations contained in ¶¶1-44 as fully set forth herein.

89. This is an action for an accounting.

90. Since Nationstar assumed the servicing of Plaintiff's mortgage, Nationstar has taken the liberty to impose unwarranted fees, surcharges, late charges, payment reversals, and other penalties on Plaintiff's mortgage.

91. Most recently, Nationstar reversed Plaintiff's timely December 2016 mortgage payment a total of six (6) times before Nationstar choose to subtract Plaintiff's timely mortgage payment altogether.

92. Plaintiff has suffered late fees, penalties, and other unwarranted charges as a direct result of Nationstar's inability to properly account for and apply Plaintiff's mortgage payments over the period of its mortgage servicing.

93. Moreover, Plaintiff suffered late charges which were unwarranted, given the fact that Plaintiff made all mortgage payments to Nationstar in a timely manner.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court:

a. Order a full and complete accounting of Plaintiff's mortgage payments with Nationstar;

b. Award Plaintiff actual damages consisting of all fees, charges, and penalties improperly made by Nationstar to Plaintiff's mortgage account;

c. Award Plaintiff reasonable attorney's fees and costs pursuant to the mortgage, note and mortgage modification; and

d. Award any other relief this Honorable Court deems equitable and just.

DATED this 29th day of January, 2018.

Respectfully submitted,

/s/ Maury L. Udell
Maury L. Udell, Esq.
FBN 121673
Attorney for Plaintiff
Beighley, Myrick, Udell & Lynne, P.A.
150 W. Flagler St., Suite 1800
Miami, FL 33130
mudell@bmulaw.com
305-349-3930 (phone)

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on 29th of January, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record identified below in the manner specified, either via transmission of the Notice of Electronic Filing generated by CM/ECF or via U.S. Mail for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing

/s/ Maury L. Udell
Maury L. Udell, Esq.
FBN 121673
Attorney for Plaintiff
Beighley, Myrick, Udell & Lynne, P.A.
150 W. Flagler St., Suite 1800
Miami, FL 33130
mudell@bmulaw.com
305-349-3930 (phone)

**SERVICE LIST**

Clinton S. Payne, Esq.
cpayne@hinshawlaw.com
Counsel for Field Asset Services

David Applegate, Esq.
David.applegate@akerman.com
Counsel for Nationstar Mortgage, LLC

Sami R. Achem, Jr.
Sami.achem@csklegal.com
Counsel for Mark Solomon & Dusten Dyson